IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**FARMERS & MERCHANTS BANK,**

    Creditor/Appellant,

    v.

**JULIUS T. SOUTHALL, III,**

    Debtor/Appellee.

Civil Action No. 7:11-cv-119 (HL)

**ORDER**

This Court undertakes an appellate review of an Order on a Motion for Valuation completed by the United States Bankruptcy Court for the Middle District of Georgia. For the reasons set forth below, the decision of the Bankruptcy Court is upheld.

I. **FACTUAL BACKGROUND**

Debtor/Appellee Julius T. Southall, III ("Southall"), filed a Petition pursuant to Chapter 12 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Georgia on January 10, 2011. Creditor/Appellant Farmers & Merchants Bank ("F&M Bank") is a secured creditor of the Debtor, holding secured claims against the Southall's equipment, his 2008 Chevrolet truck, and 505.31 acres of real estate belonging to him. The 505.31 acres of real estate is comprised of two tracts of land, one 200-acre tract

and one 305.31-acre tract. Only the real estate is at issue for purposes of this appeal.

A valuation hearing was held by the Bankruptcy Court on July 27, 2011 in front of the Honorable John T. Laney, III, United States Bankruptcy Judge for the Middle District of Georgia. During the hearing, Southall introduced Mr. Lauchin McKinnon Rozier, III ("Rozier") as an expert real estate appraiser. Mr. Rozier valued the 505.31 acres of real estate owned by Debtor at $1,550,000.00 – $650,000.00 for the 200-acre tract and $900,000.00 for the 305.31-acre tract. F&M Bank introduced Mr. Brian Massingill ("Massingill") as an expert appraiser. Mr. Massingill valued the two properties significantly higher than Mr. Rozier, appraising the properties for $2,342,000.00, or $1,423,000.00 for the 305.31-acre tract and $920,000.00 for the 200-acre tract.

After hearing the evidence, the Bankruptcy Court decided the issue of valuation from the bench, relying on Mr. Rozer's appraisal for the final valuation. The Bankruptcy Court declined to take Mr. Massingill's testimony into consideration, finding that it did not properly consider the use of the property. Mr. Massingill did not consider the fact that the 505.31 acres was used as a farming operation, which the Bankruptcy Court determined was fatal to his valuation. The court stated:

> … I do not believe that I have an expert opinion that meets the test of Section 506 except for Mr. Rozier's testimony for the debtor. And the other testimony by the other appraisers does not – in one case, it doesn't consider at all the use of the property. In the other case, considers only a little bit of the use of the property.

2

> So, I'm going to find that the valuation of – for purposes of confirming a plan at this time that proposes to continue to farm the property and the 305 acres is $900,000.00 as Mr. Rozier testified.
>
> Now, as to the 200 acres, again it's difficult to give much weight to Mr. Massingill's testimony because it didn't take into consideration the farming operation. …

The Bankruptcy Court's decision not to consider Mr. Massingill's testimony led to this appeal.

## II. **STANDARD OF REVIEW**

The district court, in reviewing a decision of a bankruptcy court, functions as an appellate court. See Williams v. EMC Mortg. Corp. (In re Williams), 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). On appeal from a bankruptcy court, district courts "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. A court must accept the bankruptcy court's findings of fact unless those facts are clearly erroneous. Id. Conclusions of law, however, including a bankruptcy court's interpretation and application of the Bankruptcy Code, are reviewed de novo. See Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.), 904 F.2d 588, 593 (11th Cir. 1990).

## III. **ANALYSIS**

The crux of the issue before this Court is the proper interpretation of 11 U.S.C. § 506(a), a provision of the Bankruptcy Code that dictates the method of valuation of collateral in bankruptcy proceedings. Section 506 of the Bankruptcy Code provides general principles to be followed in determining what standard of

valuation is proper in calculating the value of a creditor's secured claim. Matter of Lackow Bros., Inc., 752 F.2d 1529 (11th Cir. 1985). This section provides that a claim

> is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property …

11 U.S.C. § 506(a).

The Supreme Court of the United States interpreted § 506(a) in their 1997 decision Associates Commercial Corp. v. Rash, 520 U.S. 953, 117 S. Ct. 1879, a case addressing the value of a trailer truck in a chapter 13 bankruptcy proceeding where the debtor had invoked the so-called "cram down" option under 11 U.S.C. § 1325(a)(5)(C).[1] In that case, the Bankruptcy Court applied a method of valuation called a replacement value theory, which is based on what the debtor would have to pay to purchase a similar vehicle. Id. at 957, 117 S. Ct. at 1883.  The Eastern District of Texas affirmed. Id. The Fifth Circuit reversed the district court's decision, opting to use a foreclosure value theory, which determines the value of a claim based on what a debtor would realize upon

---

[1] Under the cram down option, "the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim …, and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the collateral." Rash, 520 U.S. at 957, 117 S. Ct. at 1882-83 (internal citations omitted). "[T]he creditor is exposed to 'double risks' in that the debtor keeps the collateral under a court-imposed 'crammed down' financing arrangement." In re Perez, 318 B.R. 742, 744 (Bkrtcy. M.D. Fla. 2005) (quoting Rash, 520 U.S. at 962-63, 117 S. Ct. at 1879).

foreclosure and sale of the collateral. Id. The Supreme Court reversed the Fifth Circuit, determining that a replacement theory of valuation was most appropriate under § 506(a).

In making their decision, the Court analyzed § 506(a) and reasoned that it has two parts. Id. at 961, 117 S. Ct. at 1884. The first part of § 506 addresses whether a claim is secured or unsecured. Id. The second part of § 506, and the part on which the Court placed its primary focus, provides instruction on how to value the claim. Id., 117 S. Ct. at 1885. Specifically, the second part states that the claim "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." Id. The Court reasoned that if a foreclosure value theory was used, it would render the phrase "proposed disposition and use" meaningless because the valuation would not take into account whether the collateral was retained or surrendered by the debtor – both options available to the debtor in a cram down case. Id. The failure to differentiate between the two options would be unfair to the creditor because of the possibility that the debtor might default again and the property would then be deteriorated from extended use. Id. at 962-63, 117 S. Ct. at 1879. The Rash Court further explained that a foreclosure value theory would be inappropriate because the court-imposed payment terms available to the debtor under the cram down provisions of chapter 13 "displaces a secured creditor's state-law right to obtain immediate foreclosure upon a debtor's default." Id. at 964, 117 S.

Ct. at 1879. Without the option to foreclose, using a foreclosure value theory would be nonsensical.

In this case, the parties have presented two opposing interpretations of the Rash decision and its application of § 506(a). F&M Bank argues that, under Rash, the phrase "proposed disposition or use" means that courts should consider whether the collateral will be retained or surrendered by the debtor at the conclusion of the bankruptcy proceedings. According to F&M Bank, the Bankruptcy Court adopted an unreasonably narrow interpretation of the phrase "proposed disposition or use" by looking at the specific use of the collateral as opposed to the ultimate disposition of the collateral.

On the other hand, Southall argues that § 506 should be interpreted as requiring the court to consider the specific use of collateral for proper valuation, stating that the specific use is controlling in determining the method to be used by an appraiser. Southall argues that, according to Rash, an appraiser must value collateral using a replacement value theory, which in this case would mean valuing the property according to what a willing family famer would pay a willing seller. Southall contends that to value what someone would be willing to pay for a similar asset, the specific characteristics of the collateral must be taken into consideration. This Court adopts Southall's interpretation of § 506.

There is no indication in the plain text of § 506 or in the text of the <u>Rash</u> decision that the phrase "proposed disposition or use" should be interpreted only in the context of the debtor's ultimate decision about retaining or surrendering the collateral in question. To the contrary, the <u>Rash</u> Court held that under § 506(a), the proper method of valuation was a replacement value theory that takes into consideration relevant factors in each case to find the "cost the debtor would incur to obtain a like asset for the same 'proposed … use.'" 520 U.S. at 965, 117 S. Ct. at 1886. Thus, according to this Court's reading of <u>Rash</u>, considering the specific use of the collateral is not only advisable, but necessary under § 506. If land is used as farmland, as in this case, the valuation must take into consideration relevant factors like soil analysis, availability of water, percentage of crop land to total land, agricultural history, and irrigation statistics. Only by using these factors can the court determine the cost a person would pay to obtain a like asset and obtain a proper valuation.

It is undisputed that Mr. Massengill did not consider the property at issue as farmland, but instead conducted his appraisal by valuing the property as vacant land. He stated during his testimony at the valuation hearing that "I was asked to appraise both tracts simply as vacant land regardless of improvements except for the contributory value of the home located on the property." (Doc. 1-4, p. 4.) Mr. Massengill admitted that he did not consider whether the land was irrigated or cultivated, farmland or timberland. (Doc. 1-4, p. 8.) Instead, he evaluated the property as if it was "any large tract in Lowndes County." <u>Id.</u>

7

According to this Court's reading of § 506, Mr. Massengill's appraisal fails to take into consideration the relevant factors that demonstrate the debtor's use of the property. Thus, his appraisal does not properly account for the "disposition and use" under § 506(a) and is not a proper consideration in the valuation of the collateral.

IV. **CONCLUSION**

In Rash, the Supreme Court stated that "[a]s we comprehend § 506(a), the 'proposed disposition or use' of the collateral is of paramount importance to the valuation question." Id. at 962, 117 S. Ct. at 1885. Mr. Massengill's appraisal failed to consider the "proposed disposition or use", and thus, his appraisal is not suitable for consideration by the court. The Bankruptcy Court was correct is disregarding his appraisal and testimony, and thus, the decision of the Bankruptcy Court is upheld.

**SO ORDERED**, this 13th day of July, 2011.

*s/ Hugh Lawson*
HUGH LAWSON, SENIOR JUDGE

ebr